UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| T&M INVENTIONS, LLC,<br>a Wisconsin limited liability company,<br>2575 Teresa Court<br>Green Bay, WI 54311,<br><br>       Plaintiff,<br><br>     v.<br><br>ACUITY BRANDS LIGHTING, INC.,<br>a Delaware corporation,<br>1170 Peachtree Street NE<br>Atlanta, GA 30309,<br><br>and<br><br>ABL IP HOLDING, LLC,<br>a Georgia limited liability company,<br>1170 Peachtree Street NE, Ste. 2300<br>Atlanta, GA 30309,<br><br>       Defendants. | Case No. |

## COMPLAINT

Plaintiff T&M Inventions, LLC, by its attorneys, Reinhart Boerner Van Deuren s.c., for its Complaint against Defendants Acuity Brands Lighting, Inc. and ABL IP Holding, LLC, alleges as follows:

### NATURE OF THE ACTION

1. This is an action for interfering patents under 35 U.S.C. § 291, seeking a judgment that Defendants' patent is invalid.

## THE PARTIES

2. Plaintiff T&M Inventions, LLC ("T&M") is a Wisconsin limited liability company with a principal place of business in Green Bay, Wisconsin.

3. Defendant Acuity Brands Lighting, Inc. ("Acuity") is a Delaware corporation with a principal place of business in Conyers, Georgia. Acuity is a subsidiary of Acuity Brands, Inc. ("Acuity Brands").

4. Defendant ABL IP Holding, LLC ("ABL-IP") is a Georgia limited liability company with a principal place of business in Conyers, Georgia. ABL-IP is an affiliate of Acuity.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq*. This Court has original subject matter jurisdiction over this action pursuant to 35 U.S.C. § 291 and 28 U.S.C. § 1338(a).

6. Defendants are subject to personal jurisdiction because Acuity transacts substantial and not isolated business in this District. Moreover, in a recently-dismissed civil action in this Court between T&M and Acuity, related to the same inventorship dispute, Acuity admitted both personal jurisdiction and venue were proper and asserted counterclaims, alleging to be the successor-in-interest to the relevant patent rights because ABL-IP, Acuity's affiliate, was the assignee of the named inventor.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## THE INTERFERING PATENTS

8. T&M is the owner by assignment of all right, title, and interest in United States Patent Nos. 8,438,798 (the "'798 Patent"), 8,438,799 (the "'799 Patent"), 8,438,801 (the "'801

Patent"), and 8,763,324 (the "'324 Patent") (collectively, the "T&M Patents"). Each of the T&M Patents names Michael J. McLain and Timothy Pendley as co-inventors.

9. The '798 Patent, which is entitled "Roof Penetrating Closure Structures and Systems," duly and properly issued on May 14, 2013. The application for the '798 Patent was filed on March 8, 2011. A copy of the '798 Patent is attached to this Complaint as Exhibit A.

10. The '799 Patent, which is entitled "Support Structures on Roofs," duly and properly issued on May 14, 2013. The application for the '799 Patent was filed on March 10, 2011. A copy of the '799 Patent is attached to this Complaint as Exhibit B.

11. The '801 Patent, which is entitled "Support Structures on Roofs," duly and properly issued on May 14, 2013. The application for the '801 Patent was filed on April 14, 2011. A copy of the '801 Patent is attached to this Complaint as Exhibit C.

12. The '324 Patent, which is entitled "Support Structures on Roofs," duly and properly issued on July 1, 2014. The application for the '324 Patent was filed on September 25, 2013. A copy of the '324 Patent is attached to this Complaint as Exhibit D.

13. Upon information and belief, Acuity and ABL-IP each have an ownership interest in United States Patent No. 8,793,944 (the "'944 Patent"), entitled "Rail Mounting System for Mounting Skylights and the Like Directly to Rib Elevations of a Raised Rib Metal Panel Roofing System." In a prior lawsuit before this Court, Acuity claimed that it was a successor-in-interest through ABL-IP to the rights of Jerome O. Blomberg and Scott Weaver—the named co-inventors of the '944 Patent—in the invention they later claimed in the '944 Patent. The application for the '944 Patent was filed on October 9, 2012, and the '944 Patent issued on August 5, 2014.

## FACTUAL BACKGROUND

14. This case concerns an invention that provides an improved system for mounting skylights and other loads to standing seam roofs on metal buildings.

15. The co-inventors of that invention, Michael J. McLain and Timothy Pendley, are the two members of T&M. McLain and Pendley are long-time employees of Bay Industries, Inc. and Bay Insulation Systems, Inc., respectively (together "Bay").

16. McLain and Pendley first conceived of the invention in early 2007, before Bay entered into a distributorship agreement with Sunoptics Prismatic Skylights ("Sunoptics") for a product other than the invention at issue here.

17. At that time, Sunoptics was owned by the Blomberg family—namely, Jerome "Jerry" Blomberg, and his sons Jim and Tom.

18. On October 14, 2007, Pendley had a lunch meeting with an engineer from Butler Manufacturing, Inc., Mark Henry. Pendley described the invention to Henry and sketched some of its components. After meeting with Henry, Pendley was confident that the invention would not compromise the structural integrity and performance of a standing seam metal roof.

19. Later in 2007, McLain and Pendley began looking for a manufacturer for the "parts and pieces" of their invention.

20. They first offered their employer, Bay, the opportunity to manufacture the invention's parts and pieces. Bay ultimately declined the offer but expressly authorized McLain and Pendley to independently pursue commercial opportunities for their invention.

21. In December 2007, McLain and Pendley offered Sunoptics the opportunity to manufacture the invention's parts and pieces.

22. Sunoptics expressed interest in manufacturing the invention and permitted Pendley to build a full-scale mock-up on Sunoptics' property.

23. The mock-up was intended to enable the parties to finalize production specifications and drawings, and to offer an opportunity to take photographs for installation manuals and marketing materials.

24. Pendley and Carl Lewis, Pendley's colleague at Bay, assembled the mock-up on Sunoptics' property, beginning in February 2008.

25. The mock-up consisted of a test frame building, measuring approximately 20-feet wide by 30-feet deep, and a full-scale, insulated standing seam roof.

26. By March 2008, Pendley began to install the invention on the roof mock-up that he and Lewis built. With the permission of Jerry Blomberg, Pendley directed Scott Weaver, a Sunoptics employee, to bend full-length side rails, using Sunoptics' metal-building equipment, to match the profile Pendley wanted. Pendley also directed Weaver to fabricate a lower-end enclosure, the piece that would complete the enclosure on the end nearest the eaves. And Pendley directed Weaver to fabricate the upper-end enclosure, the piece that would complete the enclosure on the end nearest the ridge.

27. Weaver made no inventive contribution to McLain and Pendley's invention.

28. In April 2008, McLain and Pendley met with Sunoptics representatives to view the assembled portion of the invention. After the viewing, Tom Blomberg told Pendley that Jerry Blomberg was going to patent McLain and Pendley's invention.

29. Although upset about what they had just heard, McLain and Pendley felt they owed a duty to their employer, Bay, not to overreact and damage the contractual relationship between Bay and Sunoptics.

30. Later that evening, McLain told Sunoptics representatives that, at the very least, Pendley's name would be on any patent application filed for their invention. Jerry Blomberg agreed to include Pendley's name on the application.

31. In August 2008, after Pendley and Lewis had installed side rails on the outside of the raised ribs of the mock-up, as Pendley and McLain had conceived of their invention, Jerry Blomberg approached Pendley with two CAD drawings drafted by a Sunoptics draftsman, which showed the side rails of the invention mounted to the inside, rather than the outside, of the raised ribs.

32. In October 2008, a provisional United States Patent Application for the invention, No. 61/102,333 (the "'333 Application"), was filed, naming Jerry Blomberg and Pendley as co-inventors. When McLain and Pendley first saw the '333 Application, they noted that Jerry Blomberg and his counsel had included only two features that McLain and Pendley believed were contributed by Jerry Blomberg: (1) the "inside mount" concept and (2) a batten strip for connecting the skylights end-to-end.

33. Less than a year later, on October 2, 2009, U.S. Patent Application No. 12/572,176 (the "'176 Application") was filed, naming Jerry Blomberg, Timothy Pendley and Michael J. McLain as co-inventors.

34. Before the '176 Application was filed, the three named co-inventors had agreed to assign their rights, title, and interest to the invention claimed in the '176 Application to a single entity that would, in turn, license (a) Sunoptics the exclusive rights to manufacture the invention and (b) Bay the exclusive rights to sell the invention. But the parties were ultimately unsuccessful at their attempts to establish that entity.

35. In November 2010, Sunoptics paid T&M approximately $20,000 on over $200,000 worth of sales of the invention claimed in the '176 Application.

36. On February 23, 2011, Sunoptics was acquired by Acuity Brands, Inc. ("Acuity").

37. As part of the acquisition, Jerry Blomberg assigned his rights, title, and interest to the invention claimed in the '176 Application to ABL-IP.

38. In March 2011, Acuity, just as Sunoptics had done before, paid T&M a 10% royalty on additional sales of products embodying the invention claimed in the '176 Application.

39. But after a series of failed attempts to negotiate a royalty on future sales with Acuity, T&M chose to seek independent patent protection of its inventive contributions to the invention claimed in the '176 Application. Accordingly, T&M filed the patent applications that would eventually issue into the T&M Patents.

40. Knowing T&M had filed these applications, and during the course of a litigation with T&M over other issues, Acuity and ABL-IP filed the patent application that would eventually issue into the '944 Patent.

## CAUSE OF ACTION
### Interfering Patents under 35 U.S.C. § 291

41. Plaintiff repeats and realleges the allegations of Paragraphs 1–40 as if fully set forth herein.

42. T&M owns the T&M Patents.

43. The T&M Patents are valid.

44. Upon information and belief, Acuity and ABL own the '944 Patent.

45. One or more of the claims of each of the T&M Patents interferes with one or more claims of the '944 Patent under 35 U.S.C. § 291.

7

46. The interfering claims owned by T&M include, but are not limited to, the following:

    a. The '798 Patent – Claim 1;

    b. The '799 Patent – Claim 1;

    c. The '801 Patent – Claim 15; and

    d. The '324 Patent – Claim 1.

47. McLain and Pendley invented the subject matter claimed in the T&M Patents before either Blomberg or Weaver invented anything (which they did not) claimed in the '944 Patent.

48. McLain and Pendley are the sole inventors of the subject matter claimed in the T&M Patents.

49. Jerry Blomberg and Scott Weaver are not the true inventors of the subject matter claimed in the '944 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. A judgment that, under 35 U.S.C. § 291, the T&M Patents and the '944 Patent are interfering patents;

B. A judgment that the '944 Patent is invalid; and

C. A permanent injunction prohibiting Acuity, ABL-IP, their parent company, subsidiaries, affiliated entities, predecessors, successors, assigns, officers, directors, shareholders, employees, and agents from filing or prosecuting any patent application that claims the subject matter invented by McLain and Pendley including any rail structure that relies for load support on the beam strength of the raised rib of a standing seam roof, and as set forth in the

'176 Application, including but not limited to, any patent application which claims the subject matter disclosed in any of the '176 Application, United States Patent Application No. 13/647,565 (the "'565 Application"), United States Patent Application No. 14/445,659 (the "'659 Application"), or United States Patent Application No. 13/659,778 (the "'778 application"); and which claim priority to the '176, '565, '659, or '778 Application, except for any claims directed solely to the batten strip.

D. A judgment deeming this an exceptional case within the meaning of 35 U.S.C. § 285 and awarding T&M its reasonable attorneys' fees.

E. Such other relief this Court deems just and equitable.

Dated this 5th day of August, 2014.

s/ David G. Hanson
David G. Hanson
WI State Bar No. 1019486
dhanson@reinhartlaw.com
James M. Burrows
WI State Bar No. 1084705
jburrows@reinhartlaw.com
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097

*Attorneys for Plaintiff T&M Inventions, LLC*
