UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

T&M INVENTIONS, LLC,

    Plaintiff,

v.                                   Case No. 14-C-947

ACUITY BRANDS LIGHTING, INC. and
ABL IP HOLDING, LLC,

    Defendants.

## DECISION AND ORDER

Title 35 U.S.C. § 285 allows an award of attorneys' fees in "exceptional cases." On September 21, 2016, I declared that this was such a case and ordered Acuity to pay T&M's reasonably incurred attorneys' fees and expenses. T&M now seeks a total of $926,263.64 in attorneys' fees and other expenses. For the reasons below, T&M is entitled to receive attorneys' fees and other expenses totaling $849,324.74.

## BACKGROUND

The facts of the underlying action are set forth more fully in the court's Findings of Fact and Conclusions of Law and Order for Judgment. (ECF No. 51.) In brief, T&M filed this patent infringement suit in August 2014. It sought judgment declaring that its patents and Acuity's patent are interfering patents and that Acuity's patent is invalid. On June 1, 2016, the court invalidated Acuity's patent. The court found on September 21, 2016 that this was an "exceptional" case pursuant to 35 U.S.C. § 285 and granted T&M's motion for attorneys' fees and nontaxable costs incurred in the case.

**LEGAL STANDARD**

A court calculates attorneys' fees using the "lodestar" amount: "the number of hours that any attorney worked on the case multiplied by a reasonable hourly rate." *Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 489 (7th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003)). The court may then adjust the figure depending on a variety of factors, including the time and labor required, the novelty and difficulty of the issue, the degree of the success achieved, the experience and ability of the attorneys, the amount involved and the results obtained, and awards in similar cases. *Hensley*, 461 U.S. at 429–30 n.3. The party seeking an award of attorneys' fees bears the burden of proving the reasonableness of the fees. *Spegon v. Catholic Bishop*, 175 F.3d 544, 550 (7th Cir. 1999) (citation omitted).

**ANALYSIS**

**A. General Objections to Attorneys' Fees**

Acuity begins by raising general objections to T&M's fees which I will address at the outset. First, Acuity argues that the fees T&M seeks in this case are facially unreasonable. Courts in this circuit have routinely relied on the American Intellectual Property Law Association (AIPLA) survey to determine the reasonableness of requested fees. *See, e.g.*, *Intellect Wireless, Inc. v. HTC Corp.*, No. 09-C-2945, 2015 WL 136142 (N.D. Ill. Jan. 8, 2015); *Marctec, LLC v. Johnson & Johnson*, 07-CV-825-DRH, 2010 WL 680490 (S.D. Ill. Feb. 23, 2010); *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 264 F. Supp. 2d 753 (S.D. Ind. 2003). The AIPLA survey "examines the economic aspects of intellectual property law practice, including individual billing rates and typical charges for

2

representative IP law services." (ECF No. 88-4 at 5.) Indeed, both parties rely on the AIPLA survey to argue their respective positions.

T&M asserts that its fees are reasonable under AIPLA standards because they fall below the median total costs in the AIPLA survey. According to the survey, the average total cost of patent infringement litigation where between $1,000,000 and $10,000,000 is at stake is $2,000,000. (ECF No. 88-4 at 41.) T&M contends that although it did not seek damages, it entered into an exclusive license agreement with a third party, BlueScope Buildings North America, Inc. (BBNA), for its use of the patented invention. Under the agreement, BBNA has paid royalties totaling $2,589,064.44. T&M claims $1,350,000.00 of the royalties have been paid since the case was filed in August 2014. (McLain Decl. Ex. A, ECF No. 92-1.) As such, if the court uses this amount as a benchmark, T&M's total costs, $926,263.64, were approximately $1,000,000 lower than the AIPLA's reported median.

Conversely, Acuity argues that the AIPLA survey data shows that T&M's request is unreasonable. Acuity claims that the court should look at the total cost of cases involving less than $1,000,000, where the median total cost is $600,000. It asserts that cases involving more than $1,000,000 are generally more complex than the case here. In this case, Acuity notes that the trial to the court lasted only three days. The parties conducted limited discovery and did not retain any expert witnesses who testified at trial.

T&M counters that extensive discovery was not required because it was able to utilize most of the materials produced in a previous case, *T&M Inventions LLC v. Acuity Brands Lighting Inc.*, 12-CV-0091. Even though most of the work was completed in the first case, T&M notes that it was still required to review and analyze that work here. It contends that the shifting character of

3

Acuity's defense and the relatively esoteric area of law involved justify the attorneys fees and expenses claimed.

Ultimately, I conclude that T&M has shown that based on the royalties they receive under the licensing agreement for the patented invention, the amount at stake in this case was between $1,000,000 and $10,000,000. While Acuity's criticisms arguably warrant some adjustment, T&M's overall request is reasonable as reflected by the data in the AIPLA survey.

Second, Acuity argues T&M's fees are unreasonable because they are 125% greater than Acuity's total fees and costs. But it is not unreasonable for the plaintiff's fees to exceed the defendant's in a case like this where T&M had the burden to prove the invalidity of Acuity's patent by a preponderance of the evidence. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1169 (Fed. Cir. 2006). In order to meet its burden of proof, T&M was arguably more likely to have higher fees than Acuity. In hindsight, it is often easier to criticize the amount of work expended on behalf of a client as excessive, but until the conclusion of the case and the rendering of a final verdict, attorneys do not know what the judge or jury is thinking and it is entirely reasonable to leave nothing to chance in putting forward one's best case. It is understandable for a party to vigorously and aggressively prosecute its case, and T&M did just that.

It is also noteworthy that T&M's attorneys did not have an incentive to "run up the tab" because this is not a typical fee-generating case. Indeed, some cases begin with the expectation that fees could be awarded, which may tempt attorneys to overbill their time. *Medcom Holding Co. v. Baxter Travenol Labs, Inc.*, 200 F.3d 518, 521 (7th Cir. 1999). The possibility of receiving attorneys' fees in this case, however, presented itself only after the trial concluded and the court determined this case was "extraordinary." The fees here "are not pie-in-the-sky numbers that one

4

litigant seeks to collect from a stranger but would never dream of paying itself," *id.* at 520, because T&M paid its bills in full in the ordinary course of business. "[T]he best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008); *see also Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*, 546 F. Supp. 2d 646, 649 (E.D. Wis. 2008) ("When a client finally pays the bill and continues to retain the law firm's services, it has already implicitly conceded the reasonableness of the fees charged."). Regardless of whether the client has paid the fees, however, "[a]n attorney's hours are subject to the scrutiny of the court and unreasonable hours should not be compensated." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996). It is with these considerations in mind that I now turn to Acuity's specific objections to T&M's attorneys' fees and other expenses.

**B. Reinhart's Attorneys' Fees**

Reinhart Boerner Van Deuren s.c. seeks $685,155.98 in attorneys' fees; $18,953.23 in other fees; and $10,402.18 in expenses. Acuity asserts that the fees attributed to Reinhart should be reduced because their billing practices display a pattern of unreasonably inflated timekeeping in 323 entries. Specifically, Acuity challenges Reinhart's use of billing in quarter-hour increments for all time entries. It argues that using quarter-hour increments, rather than tenth-hour increments, unreasonably inflates attorney time. Most notably, Acuity claims the 45.75 hours billed for drafting the complaint and the 80 hours for drafting the trial brief are excessive. Acuity also suggests that the billing practices of Reinhart's attorneys were larger than those of other attorneys for the same tasks or that the Reinhart attorneys recorded time for activities that other attorneys did not bill for. Acuity asserts that Wisconsin law firms customarily bill in six-minute increments and that it could

5

not identify any other major law firm that billed in quarter-hour increments.  Reinhart responds that quarter-hour billing is not per se unreasonable and that it routinely bills in quarter-hour increments.

The Seventh Circuit has not addressed whether billing in quarter-hour increments is reasonable, but a number of district courts in this circuit have concluded it is. *See, e.g.*, *Garcia v. R.J.B. Props., Inc.*, 756 F. Supp. 2d 911, 918 (N.D. Ill. 2010) ("[I]f the firm's standard practice is to bill in quarter-hour increments, it is not required to adopt a different practice in fee-shifting cases."); *Morimanno v. Taco Bell*, 979 F.Supp. 791, 799 (N.D. Ind. 1997) ("Billing by the quarter-hour does not *ipso facto* call for a reduction. . . . If [plaintiff's counsel] charges their paying clients by the quarter-hour, then there is no reason they should be forced to adjust their usual billing procedures just because [defendant] . . . does not pay their lawyers in the same way."); *see also Branham v. Snow*, No. 1:01-CV-0152-JDT-WTL, 2006 WL 1750443, at *5 (S.D. Ind. June 19, 2006); *Chao v. Current Dev. Corp.*, No 03-C-1792, 2009 WL 393862, at *5 (N.D. Ill. Feb. 13, 2002); *Herrejon v. Appetizers And, Inc.*, No. 97-C-3437, 1999 WL 116598, at *3 (N.D. Ill. Feb. 22, 1999).  While quarter-hour billing is not per se unreasonable, it may be unreasonable under the facts and circumstances of a given case. *See LaSalvia v. City of Evanston*, No. 10-C-3076, 2012 WL 2502703, at *3 (N.D. Ill. June 28, 2012) (citing *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986)); *see also Weyker v. Quiles*, No. 14-cv-782-pp, 2015 WL 5177970 (E.D. Wis. Sept. 4, 2015).

Again, Acuity takes issue with 323 of Reinhart's timekeeping entries that it believes are inflated, including those entries where Reinhart but not other firms billed for certain exchanges and those regarding the complaint and trial brief.  As such, Acuity requests that this court reduce Reinhart's attorneys' fees by $83,541.00.  On top of the $83,541.00 reduction, Acuity also requests a general 20% reduction to ensure Reinhart's billing records are not inflated.

Acuity cannot have it both ways. It cannot request a 20% reduction to penalize Reinhart for billing in quarter-hour increments and request a reduction for specific entries in Reinhart's billing records it believes were inflated. Acuity's requested 20% reduction overstates the amount of time inflation that might have occurred in this case. The fact of the matter is that Acuity's line-item objections to the 323 billing entries equates to only a 12% reduction. Recognizing that statistically, all of Reinhart's entries could not be inflated, the court will reduce Reinhart's fees by 10%. The court concludes that a 10% reduction reasonably accounts for all of Acuity's concerns with Reinhart's potential time inflation as well as its more general comments concerning the nature and complexity of the case. While there is no reason to suspect that the work was not performed, the court finds that Reinhart's practice of billing in quarter-hour increments is too broad. In sum, Acuity must pay Reinhart's reasonable attorneys' fees totaling $616,640.38.

**C. Northwind IP Law Attorneys' Fees**

Northwind IP Law, T&M's patent counsel, seeks $89,755.00 in attorneys' fees; $1,430.00 in other fees; and $834.30 in expenses. Acuity challenges 19 timekeeping entries, asserting that the fees sought for this work should be reduced by $17,204.30. It argues that Attorney Wilhelm improperly billed for (1) work attributable to the patent prosecution; (2) his time preparing for deposition; and (3) his time attending trial.

Acuity argues that Northwind should not be compensated for work charged regarding the prosecution of T&M's patents and preparation of a privilege log. T&M argues that none of the fees charged in this case relate to the prosecution of any of T&M's patents. Three of the patents were issued by November 11, 2013, the date of the first entry Acuity objects to. The fees Acuity challenges do not relate to prosecuting the last patent, which was issued in July 2014. After

reviewing the billing records, the court finds that these entries relate to litigating this claim and are not unreasonable.

Acuity further asserts Attorney Wilhelm should not be compensated for the time he spent preparing for and attending his deposition. Acuity sought to depose Attorney Wilhelm to gather information regarding its affirmative defense that claim 15 of a T&M patent was invalid due to inequitable conduct during its prosecution. However, four days before his deposition, T&M filed a disclaimer of claim 15 with the U.S. Patent and Trademark Office. Acuity suggests that had it known about the disclaimer, it would have canceled the deposition. Nevertheless, Acuity's counsel deposed Attorney Wilhelm for three hours and marked eight exhibits. Attorney Wilhelm's time spent preparing for this deposition was not unreasonable. In short, the court will not reduce Northwind's requested fees for Attorney Wilhelm's time preparing and attending the deposition.

Finally, Acuity argues that Attorney Wilhelm unreasonably billed for his time attending the three-day trial because he did not sit at counsel table or participate in the trial. Acuity argues Attorney Wilhelm's attendance was duplicative and unnecessary. The court agrees. This was not a complex patent, and his attendance was not necessary to familiarize, instruct, and generally assist the litigation attorneys with pertinent issues at trial. Accordingly, Northwind's fees will be reduced by $8,423.30. As such, Acuity must pay Northwind's reasonable attorneys' fees and expenses totaling $83,596.00.

**D. Rosenberg Consulting Services' Expenses**

Acuity argues that the fees sought for Rosenberg Consulting Services' (RCS) trial consulting should be reduced by $18,450.00 for the work attributed to "K. Thomas's consulting time." T&M submitted an invoice with its initial brief containing vague descriptions of the work performed by

8

Thomas. (ECF No. 86-1.) Acuity suggests that this work is duplicative of work later performed by RCS creating demonstrative exhibits. However, T&M has since provided a more detailed description of the work Thomas charged for, which included taking photographs, creating drawings, and preparing timelines. (ECF No. 94-1.) Accordingly, the court finds that the time charged for this work was not duplicative and will not be reduced.

## CONCLUSION

In sum, T&M is entitled to $849,324.74 in attorneys' fees and expenses. The judgment previously entered June 1, 2016 is hereby amended to reflect that Defendants shall pay to T&M the amount of $849,324.74 in attorneys' fees and expenses. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   27th   day of December, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
